UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) Civil No. |
| v. | ) |
| CREDIT RESTORATION BROKERS, LLC, a Florida limited liability company, also d/b/a CLEAR CREDIT SAM SKY and SAM SKY CREDIT GUY, | ) |
| DEBT NEGOTIATION ASSOCIATES, LLC, a Florida limited liability company, | ) |
| SAM TARAD SKY, individually and as an owner, officer, or director of Credit Restoration Brokers, LLC, and Debt Negotiation Associates, LLC, | ) |
| KURT A. STREYFFELER, P.A., a Florida corporation, and | ) |
| KURT A. STREYFFELER, individually and as an owner, officer, or director of Kurt A. Streyffeler, P.A., | ) |
| Defendants. | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges as follows:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and under Section 410(b) of the

Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j, which prohibits unfair or deceptive advertising and business practices by credit repair organizations.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the Credit Repair Organizations Act and to secure such equitable relief as may be appropriate in each case, including restitution and disgorgement. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, and 1679h(b).

**DEFENDANTS**

6. Defendant Credit Restoration Brokers, LLC ("CRB"), is a Florida limited liability company, with its principal place of business at 12995 South Cleveland Avenue, Suite 243, Fort Myers, Florida 33902. Defendant CRB also does business as Clear Credit Sam Sky and as Sam Sky Credit Guy. Defendant CRB transacts or has transacted business in this district.

7. Defendant Debt Negotiation Associates, LLC ("DNA"), is a Florida limited liability company, with its principal place of business at 12995 South Cleveland Avenue, Suite 243, Fort Myers, Florida 33902. Defendant DNA transacts or has transacted business in this district.

8. Defendant Sam Tarad Sky ("Sky") is an owner, officer, or director of Defendants CRB and DNA. At all times material to this Complaint, acting alone or in concert with others, Defendant Sky has formulated, directed, controlled, had the authority to control, or participated in the acts or practices of Defendants CRB and DNA, including the acts or practices set forth in this Complaint. Defendant Sky, in connection with the matters alleged herein, transacts or has transacted business in this district.

9. Defendant Kurt A. Streyffeler, P.A. ("Streyffeler Law Firm"), is a Florida profit corporation with its office and principal place of business at 2211 Peck Street, Suite 250, Fort Myers, Florida 33902. Defendant Streyffeler Law Firm transacts or has transacted business in this district.

10. Defendant Kurt A. Streyffeler ("Streyffeler") is an attorney licensed by the State of Florida and an owner, officer, or director of Kurt A. Streyffeler, P.A., with his office and principal place of business at 2211 Peck Street, Suite 250, Fort Myers, Florida 33902. At all times material to this Complaint, acting alone or in concert with others, Defendant Streyffeler

has formulated, directed, controlled, had the authority to control, or participated in the acts or practices of Defendant Streyffeler Law Firm, including the acts or practices alleged in this Complaint. Defendant Streyffeler, in connection with the matters alleged herein, transacts or has transacted business in this district.

## COMMERCE

11. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

## CREDIT REPAIR (SKY, CRB, AND STREYFFELER)

12. Since at least April 2004, and continuing thereafter, Defendant CRB has advertised, marketed, promoted, offered for sale, and sold credit repair services to consumers across the country. CRB has advertised, and continues to advertise, its services to consumers through Internet websites, such as www.crbcredit.com and www.creditandinvestment.com, and by other means, including, but not limited to, rack cards, the *Yellow Pages*, magazine advertisements, and pamphlets.

13. Through verbal representations made by CRB and its representatives, including Sky, written statements on CRB's websites, and in promotional materials and other advertisements, CRB has offered, and continues to offer, credit repair services purporting to improve consumer credit scores by adding, deleting, and changing information on consumer reports (also known as credit reports). CRB has claimed to specialize in removing derogatory information from consumer reports, including, but not limited to, inquiries, late payments,

collections, repossessions, bankruptcies, foreclosures, child support delinquencies, judgments, student loans, and tax liens, regardless of whether such information is not accurate or obsolete.

14.     To attract consumers and induce them to purchase their credit repair services, CRB's websites have contained representative statements such as the following:

> **As the premier source of credit report repair and restoration, credit restoration brokers builds [*sic*] your credit score by adding, deleting, and correcting information on your credit report.**
>
> * * *
>
> **We specialize in removing the following items from consumer credit reports:**
>
> - Inquiries
> - Late payments
> - Collections
> - Repossessions
> - Bankruptcies
> - Foreclosures
> - Child support
> - Judgements [sic]
> - Student loans
> - Tax liens
> - And more. . .
>
> **If your credit report is plagued with any of the above, it's not too late!**
>
> We will seek to remove and/or correct non-evaluated, erroneous, obsolete, outdated, incomplete, inaccurate, missing, misleading, unlawfully authorized, and/or unlawfully placed accounts. Additionally, if you are unable to recall if time frames are correct and any other inappropriate information on your credit bureau report, **your credit can be restored!**

* * *

**FREQUENTLY ASKED QUESTIONS**

1. Q   My credit is really a mess after my divorce.  Can you help me with my bankruptcy and foreclosure?
   A   Sam Sky can help with ANY derogatory credit problems.  Even student loans, tax liens and judgments. We also can refer you to a non-profit save your home program for people who are in foreclosure.

*(Emphasis in original).*

15.   Consumers telephone and meet face-to-face with CRB.  During these telephone calls and meetings, to induce consumers to purchase CRB's credit repair services, CRB and its representatives, including Sky, routinely convey the impression that CRB can remove permanently all or nearly all negative items from consumers' credit reports, including, but not limited to, judgments, foreclosures, tax liens, bankruptcies, repossessions, and child support delinquencies, regardless of accuracy.

16.   CRB charges and receives advance payment before fully performing credit repair services.  Although CRB sometimes accepts partial advance payment and the remaining balance in installments, CRB requires a substantial advance fee before fully performing, or even commencing, service.

17.   CRB's advance fees average approximately $2,000 and range between $1,799 and $2,199.  At times, CRB has charged fees ranging from $300 to $5,000.  Its websites have stated that the fees are based upon the "quantity and severity of bad credit" on a consumer report.

18.   CRB has called its credit repair sales contract a "Membership Agreement."  The Membership Agreement attempts to disguise the advance fee for credit repair services by stating that the agreement includes "a twelve month credit repair program *free* to our members."

(*Emphasis added*).  Although the Membership Agreement states that it entitles consumers to member benefits such as twelve months of credit counseling, CRB stressed credit repair services in its websites and in its written and verbal representations.

19. CRB's Membership Agreement fails to contain the specific statements describing consumers' three-day right to cancel the contract required by Section 406(b)(4) of the Credit Repair Organizations Act, 15 U.S.C. § 1679(b)(4).

20. In or about November 2008, CRB began selling a credit repair and credit-related product (sometimes called the "digital product") consisting of brochures and booklets stored electronically and emailed to consumers that includes, among other things, a do-it-yourself debt settlement book, a do-it-yourself credit repair book, a book about credit written by Sky, and various pieces of information related to credit issues.  CRB discontinued using the Membership Agreement and replaced it with the digital product.

21. The digital product typically sells for $2,000, and the price ranges from $1,799 to $2,199, depending upon whether the consumer makes one payment or multiple installment payments.

22. Consumers purchase the digital product to receive CRB's purportedly free credit repair services.

23. CRB typically performs credit repair services by sending a series of four letters ("dispute letters") to consumer reporting agencies at regular intervals.  In the dispute letters, CRB typically disputes every negative item appearing in a consumer report.  The first two dispute letters in the series appear as if they were sent by consumers and the latter two appear on Defendant Streyffeler Law Firm's letterhead.

24. CRB signs consumers' names and uses consumers' return addresses in the first two dispute letters in the series. The dispute letters do not indicate that they were created by CRB and do not mention CRB.

25. CRB generates the next two dispute letters on Streyffeler Law Firm's letterhead. CRB provides the letters to Streyffeler for his signature and mailing. Often, the letters do not mention CRB.

26. Streyffeler signs and mails the dispute letters generated by CRB. Streyffeler conducts no independent review or investigation of the disputes raised in the letters provided by CRB.

27. CRB routinely lists "identity theft" in its dispute letters as a reason to dispute negative items appearing on consumer reports regardless of whether consumers indicated that they were victims of identity theft.

28. Consumers often do not know which negative items CRB has disputed or the reasons provided for the disputes because CRB does not show or provide consumers with copies of the dispute letters, even when consumers request them. When consumers request copies of the dispute letters, CRB sometimes explains that it does not wish to reveal its credit repair techniques and to show consumers how to start their own credit repair businesses.

29. In numerous instances, CRB has failed to remove negative items from consumer reports that it represented that it would remove.

**DEBT RELIEF (SKY, CRB, AND DNA)**

30. Until approximately October 2008, CRB also offered debt relief services to consumers. CRB touted its debt relief skills and experience on its websites. Representative statements from CRB's websites include:

> We have a well versed team of credit and collection professionals, including a former debt collection broker and two former collection company owners. We have debt laws on all 50 states including statutes of limitations, assignment of debt laws, judgements [*sic*], and more. With our legal team, your results will be spectacular, and the savings to you will be tremendous.

31.     CRB purported to offer two debt relief services. CRB claimed that it could negotiate either a lump sum payment or a monthly payment plan to settle debts. Through verbal representations and statements on its websites, CRB represented that consumers who purchased CRB's debt relief services would obtain settlements with their unsecured creditors for substantially less than the amounts owed, such as $0.30 on the dollar when participating in the lump sum debt relief service or $0.50 on the dollar when participating in the monthly payment plan service. Representative statements that appeared on CRB' websites include:

> Settlements paid in an immediate one time lump sum are usually around $0.30 on the dollar, including our fees.

> \* \* \*

> Settlements are usually broken into monthly payments over a 24 to 48 month time span. Our client pays approximately $0.50 on the dollar, including our fees.

32.     In face-to-face meetings and telephone conversations with consumers, CRB and its representatives, including Sky, explained that it collected an advance payment from the consumer for a substantial portion, such as 30% to 60%, of the consumer's debt. CRB and its representatives, including Sky, further explained that CRB would use the collected funds to negotiate a settlement with the consumer's creditors, and retain whatever amount is not paid to the creditors in settlement as a fee. CRB created the impression that it would offer a large enough percentage of the outstanding debt to induce the creditor to accept a settlement.

33. In approximately November 2008, Sky moved his debt relief business from CRB to a newly created entity, DNA, and offered services that remained essentially the same. On its websites, DNA represents that it offers two different services: an "accelerated debt settlement (lump sum)" service ("lump sum service") and a "structured debt settlement (2-4 year)" service ("structured service"). DNA represents that it charges consumers a one time up-front fee to enroll in the lump sum service, that consumers will complete the lump sum service in four to five months, and that negative consumer report entries will be removed four to five months after consumers complete the lump sum service.

34. DNA's websites describe the lump sum service as a service in which the customer pays 30% to 35% of the debt, including DNA's fee:

> DNA'S (LUMP SUM) ACCELERANT PROGRAM IS
> DESIGNED FOR OUR CLIENTS TO PAY DNA 30% - 35% OF
> THE TOTAL DISPUTED DEBT.  DNA WORKS DILIGENTLY
> TO SETTLE THE DEBT AND ONCE THE CREDITOR
> ACCEPTS DNA'S SETTLEMENT OFFER; DNA'S FEE IS THE
> REMAINDER OF THE 30% - 35% FOR THE EARMARKED
> DEBT.

35. The website states that the settlement will include removing negative entries about the debt from consumer reports:

> SO IT'S NOW POSSIBLE TO SETTLE YOUR DEBT AND
> LEGALLY HAVE THE NEGATIVE CREDIT HISTORY
> REMOVED FROM YOUR CREDIT REPORT FOR THAT
> PARTICULAR CREDIT ACCOUNT.

36. In fact, CRB and DNA typically conduct no negotiations and do little more than send a check to the consumer's creditors for a small percentage of the amount owed on the debt. On the check, CRB and DNA stamp a statement purporting to make the check constitute the

creditor's agreement that the debt was paid in full and that the consumer never made late payments. Representative statements stamped on checks by CRB and DNA include:

> Account and judgment mutually viewed as paid in full and never late. $500 + $100 for mutual acceptance to vacate judgment.

37. With the checks, CRB and DNA attempt to create an accord and satisfaction of debts under Florida law. Florida permits the accord and satisfaction of unliquidated or disputed claims with a check written for less than the full amount of an obligation if the check contains a conspicuous statement that the check is tendered in full satisfaction of the claim, the creditor cashes the check, and the creditor does not return the payment within ninety days of cashing the check. Fla. Stat. 673.3111. (Accord and satisfaction by use of instrument).

38. In the lump sum service, CRB and DNA send letters to creditors disputing the amount of the creditor's claim because of late payment charges, interest rate changes, or other charges that CRB and DNA claim that the consumer disputes.

39. With the letters, CRB and DNA attempt to create disputes over the amount of the consumers' debt because Florida law does not permit using an endorsement on a check for less than the full amount due to satisfy a debt when the amount of the debt or obligation is liquidated, *i.e.*, undisputed or definite. Fla. Stat. § 725.05. CRB and DNA treat all debts enrolled in the lump sum service as disputed and send letters to creditors claiming that the debts are disputed.

40. The statements that CRB and DNA place on the checks are ineffective. After cashing checks from CRB and DNA, creditors continue pursuing collection activities against CRB and DNA's customers, including making telephone calls and sometimes pursuing court actions, and negative information about the debts continues to appear in consumer reports.

41.     The statements that CRB and DNA place on checks are also ineffective in preventing consumer reporting agencies from reporting negative information about the debt. The Fair Credit Reporting Act ("FCRA") permits consumer reporting agencies to report accurate, negative information such as late payments, charge-offs, collections, judgments, and garnishments for seven years.  15 U.S.C. § 1681c.

42.     CRB and DNA send letters to creditors and to consumer reporting agencies arguing that the cashed checks create binding settlements under Fla. Stat. § 673.3111. Streyffeler sends follow-up form letters raising the same arguments.

43.     CRB has filed suits in Lee County, Florida, small claims court on behalf of several of its customers against consumer reporting agencies seeking rulings that the cashed checks create binding settlement agreements.

44.     In the structured service, CRB and DNA set up an escrow account and instruct consumers to make monthly deposits into it.  DNA's websites describe the structured service as a two-to-four year service that contemplates the consumer paying 55% of total debt, with 40% going to the creditor and 15% to DNA:

> IN THE 2-4 YEAR STRUCTURED PROGRAM OUR FEES COME OUT OF YOUR MONTHLY PAYMENT.  OUR PROGRAM IS DESIGNED FOR YOU TO PAY 55% OF YOUR DEBT.  TYPICALLY 40% GOES TO THE CREDITOR AND 15% STAYS HERE AT DNA.  WE COLLECT OUR 15% FEE DURING THE FIRST 12-18 MONTHS.  DNA CHARGES A $24.95 MONTHLY MAINTENANCE FEE.  THE GOOD NEWS FOR YOU IS THAT THERE IS ZERO UP FRONT FEES AND THERE ARE NO ADDITIONAL CHARGES OR FEES.

45. DNA also describes or has described the structured service as a two-to-four year service that contemplates the consumer paying 59% of the consumer's total debt, with 39% of the total debt going to the creditor and 20% to DNA, plus a monthly fee of $24.95 to maintain the escrow account.

46. DNA deducts its fees from the consumer's initial deposits into the escrow accounts. Sometimes DNA deducts the entire amount of the consumer's initial escrow deposits for its fees.

47. While participating in the structured service, consumers continue to accrue charges on their overdue obligations, such as late fees and penalties, creditors continue collection activities on those obligations, and consumer reporting agencies continue to report negative information about those obligations.

48. DNA sends correspondence to creditors of consumers in the structured service seeking to reduce consumers' obligations. Typically, creditors do not answer the correspondence. Some refuse to deal with DNA, some reply that they will wait and see, and some request a lump sum payment for the entire obligation. DNA typically fails to obtain agreements with creditors to accept payments from the escrow accounts in satisfaction of the debts owed to the creditors by DNA's structured service customers.

## THE CREDIT REPAIR ORGANIZATIONS ACT

49. The Credit Repair Organizations Act took effect on April 1, 1997, and has since that date remained in full force and effect.

50. The Credit Repair Organizations Act defines a "credit repair organizations" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating [.]

15 U.S.C. § 1679a(3).

51. The purposes of the Credit Repair Organizations Act, according to Congress, are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

52. The Credit Repair Organizations Act prohibits all persons from making, or counseling or advising any consumer to make, any untrue or misleading statement, or any statement which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading, with respect to any consumer's credit worthiness, credit standing, or credit capacity to any consumer reporting agency as defined in 15 U.S.C. § 1681(f) or to any person who has extended credit to the consumer or to whom the consumer has applied or is applying for an extension of credit. 15 U.S.C. § 1679b(a)(1).

53. The Credit Repair Organizations Act prohibits all persons from making or using any untrue or misleading representation of the services of the credit repair organization. 15 U.S.C. § 1679b(a)(3).

54. The Credit Repair Organizations Act prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed.  15 U.S.C. § 1679b(b).

55. The Credit Repair Organizations Act requires credit repair organizations to include, in any contract or agreement for services, specific conspicuous statements regarding the consumers' right to cancel the contract without penalty or obligation at any time before midnight of the third business day after the date on which the consumers signed the contract or agreement. 15 U.S.C. § 1679d(b)(4).

56. Pursuant to Section 410(b)(1) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(1), any violation of any requirement or prohibition of the Credit Repair Organizations Act constitutes an unfair or deceptive act or practice in commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
COUNT ONE
(AS TO SKY, CRB, STREYFFELER, AND STREYFFELER LAW FIRM )**

57. In numerous instances, in connection with the operation of a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants Sky, CRB, Streyffeler, and Streyffeler Law Firm have made untrue or misleading statements, or statements that should have been known to them, upon the exercise of reasonable care, to be untrue or misleading, to consumer reporting agencies with respect to consumers' credit worthiness, credit standing, or credit capacity, including, but not limited to, untrue or misleading statements that consumers have been victims of identity theft.

58.     The acts or practices of Defendants Sky, CRB, Streyffeler, and Streyffeler Law Firm, as described in Paragraph 57 above, violate Section 404(a)(1) of the Credit Repair Organizations Act, 15 U.S.C. § 1679b(a)(1).

## COUNT TWO
## (AS TO SKY AND CRB)

59.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of services to consumers by a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants Sky and CRB have made untrue or misleading representations to induce consumers to purchase their credit repair services, including, but not limited to, the representation that they can improve substantially consumers' credit reports or profiles by permanently removing negative information from consumers' credit reports, even when such information is accurate and not obsolete.

60.     The acts or practices of Defendants Sky and CRB, as described in Paragraph 59 above, violate Section 404(a)(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679b(a)(3).

## COUNT THREE
## (AS TO SKY AND CRB)

61.     In numerous instances, in connection with their operation as a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants Sky and CRB have charged or received money or other valuable consideration for the performance of credit repair services that they have agreed to perform before such services were fully performed.

62. The acts or practices of Defendants Sky and CRB, as described in Paragraph 61 above, violate Section 404(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679b(b).

### COUNT FOUR
### (AS TO SKY AND CRB)

63. In numerous instances, in connection with their operation as a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants Sky and CRB have failed to include in their consumer contracts conspicuous statements regarding the consumers' right to cancel the contracts without penalty or obligation at any time before the third business day after the date on which the consumers signed the contracts.

64. The acts or practices of Defendants Sky and CRB, as described in Paragraph 63 above, violate Section 406(b)(4) of the Credit Repair Organizations Act, 15 U.S.C. § 1679d(b)(4).

### VIOLATIONS OF SECTION 5 OF THE FTC ACT

65. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

66. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT FIVE
### (AS TO SKY AND CRB)

67. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair services, Defendants Sky and CRB have represented, directly or indirectly, expressly or by implication, that they can improve substantially

17

consumers' credit reports or profiles by permanently removing negative information from consumers' credit reports, even when such information is accurate and not obsolete.

68. In truth and in fact, in numerous instances in which Defendants Sky and CRB have made the representation set forth in Paragraph 67 of this Complaint, they cannot improve substantially consumers' credit reports or profiles by permanently removing negative information from consumers' credit reports, when such information is accurate and not obsolete.

69. Therefore, the representation of Defendants Sky and CRB set forth in Paragraph 67 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT SIX
## (AS TO SKY, CRB, AND DNA)

70. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defendants Sky, CRB, and DNA have represented, directly or indirectly, expressly or by implication, that consumers who purchase their debt relief services will be able to satisfy their debts by paying substantially less than the full amount of those debts, such as $0.30 or $0.50 for each dollar owed to a creditor.

71. In truth and in fact, in numerous instances in which Defendants Sky, CRB, and DNA have made the representation set forth in Paragraph 70 of this Complaint, that representation was false, misleading, or not substantiated at the time that the representation was made.

72. Therefore, the making of the representation as set forth in Paragraph 70 of this Complaint constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

73. Consumers have suffered, and will continue to suffer, substantial injury as a result of Defendants' violations of the FTC Act and the Credit Repair Organizations Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

74. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act. The Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including, rescission or reformation of contracts, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

75. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the Credit Repair Organizations Act, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), and the Court's own equitable powers, requests that the Court:

  A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a temporary restraining order and preliminary injunction;

  B. Enter a permanent injunction to prevent future violations of the FTC Act and the Credit Repair Organizations Act by Defendants;

  C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the Credit Repair Organizations Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

  D. Award Plaintiff the costs of bringing this action, as well as such other additional relief as the Court may determine to be just and proper.

DATED:  January 19, 2010       Respectfully submitted,

                WILLARD K. TOM
                General Counsel

                s/ John C. Hallerud
                JOHN C. HALLERUD
                Illinois Bar No.6194655; Iowa Bar No. 9061
                Attorney for Plaintiff
                Federal Trade Commission
                55 West Monroe Street, Suite 1825
                Chicago, Illinois 60603
                (312) 960-5634 [Telephone]
                (312) 960-5600 [Facsimile]
                jhallerud@ftc.gov [Email]